UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON D.

                                **Plaintiff,**                           22-CV-06301-HKS

v.

COMMISSIONER OF SOCIAL SECURITY,

                                **Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #17.

## BACKGROUND

On July 11, 2019, plaintiff, at the age of 40, protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of June 1, 2012. Dkt. #7, pp. 238-239.[1] Plaintiff also protectively filed a Title XVI application for supplemental security income ("SSI"). Dkt. #7, pp. 231-237. Plaintiff alleged he was disabled due to eight herniated discs; inability to walk or stand for long times; trouble sleeping; chronic back pain; issues lifting; muscle spasms; disc degeneration; arthritis in the back; and depression. Dkt. #7, p. 260. Plaintiff's claims were denied initially, Dkt. #7, pp. 127-146, and on reconsideration. Dkt. #7, pp. 149-172.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Plaintiff requested a hearing, and a telephonic hearing was held on December 3, 2020, before Administrative Law Judge ("ALJ") Michael W Devlin. Dkt. #7, pp. 37-71. Plaintiff appeared with counsel.

On examination by his counsel, plaintiff testified that he was unable to work due to his back problems, including herniated discs, degenerative disc disease, osteoarthritis, and scoliosis. Dkt. #7, pp. 42-43. He stated that he has shooting pain down his back, buttocks, legs, and to his feet. Dkt. #7, p. 43.

Plaintiff also testified that he suffers from severe depression, anxiety disorder, and post-traumatic stress disorder ("PTSD"). Dkt. #7, p. 43. Some days, he feels so depressed that he does not want to get out of bed or cook. *Id.*

Plaintiff also testified that he experiences many side effects from the medications he takes. His sleep medicine makes it hard to wake up, and other medications cause him confusion, memory problems, constipation, irritability, and mood swings. Dkt. #7, p. 44. When he is out of certain medications, he has physical withdrawal symptoms and sometimes hallucinations. *Id.* He also has constant dry mouth, is sometimes woozy and dizzy, cannot focus, and he finds it difficult to communicate. *Id.*

Next, plaintiff testified that he can normally sit comfortably for 15-20 minutes before he needs to stand up and move around. Dkt. #7, p. 45. He can also stand for 15-20 minutes and can walk for 5-10 minutes. *Id.*

To get around, such as going to the grocery store, plaintiff takes public transportation or gets a ride from a friend. Dkt. #7, p. 46. He also testified that it is very difficult for him to go up staircases. *Id.*

When asked if he could do continuous activity for an eight-hour period, plaintiff testified that he would need to take breaks every 15-20 minutes. Dkt. #7, pp. 46-47. He also stated that he cannot bend to the floor or stoop, crouch, or squat. Dkt. #7, p. 47.

Plaintiff further testified that he could lift a bag of sugar but not a gallon of milk. *Id.* His case manager usually takes him shopping and helps him with his groceries and his laundry. Dkt. #7, pp. 47-48.

Plaintiff testified that reaching is difficult, and he uses a "grabber" at home to pick things up and perform other tasks. Dkt. #7, p. 48. He also states that he has no computer skills, does not know how to type, and would find it difficult to use a computer due to pain in his neck and legs. Dkt. #7, pp. 48-49.

Next, plaintiff testified that he can slowly move his head side to side, but it causes "crunching" sounds. Dkt. #7, p. 49. He also has difficulty rising from the seated position and every time he does it, he feels pain like a "hot iron" in his back. *Id.* Similarly, he testified that getting out of bed in the morning is one of the most painful moments of his day, and he uses a walking stick to help him get up. *Id.*

Plaintiff testified that he also has COPD and is on several breathing medications and an inhaler. Dkt. #7, p. 50. He is also trying to quit smoking cigarettes. *Id.*

Plaintiff next testified that his short-term memory is "absolutely horrible." *Id.* His back pain also affects his ability to focus and concentrate, and people think he is a "jerk" because he is snappy and moody due to the constant pain. Dkt. #7, p. 51.

Plaintiff testified that it takes him a very long time to learn new things, and he gets easily frustrated, has a poor attitude, and gives up due to the pain. Dkt. #7, pp. 51-52. If he is in a stressful situation, he usually has a mild panic attack or lashes out at other people. Dkt. #7, pp. 52-53.

As to maintaining a schedule, such as a full-time position where he had to be somewhere at a certain time, plaintiff testified that he "definitely" could not do that. Dkt. #7, p. 54.

Plaintiff also testified that he has panic attacks at least twice a week. Dkt. #7, pp. 54-55. He does not like to go outside, be in large groups of people, go shopping, or take the bus, and he usually stays at home unless he has an appointment. Dkt. #7, pp. 55-56. He stated he did not think he could get along very well with supervisors or coworkers. Dkt. #7, p. 56.

Plaintiff's counsel next asked him about his daily activities. He testified that he does not do well with cooking; he makes sandwiches and heats soup in the microwave, but he finds it difficult to prepare other food. Dkt. #7, pp. 56-57. He also cannot sweep or mop, so he pays friends to do it for him or his counselor helps him. Dkt. #7, p. 57.

Next, plaintiff testified that his back injury has ruined his whole life, and he can no longer go hunting, snowboarding, rock climbing, or ride his mountain bike. Dkt. #7, p. 58. Most days, he listens to audio books because reading gives him headaches, and he does not get glasses because it would require being in crowds. Dkt. #7, p. 59. His teeth also hurt because he cannot see a dentist due to fear. *Id.*

Finally, plaintiff's counsel asked him about his personal care. Plaintiff testified that it takes him "almost a day" to get dressed, and he often stays in his pajamas unless he has somewhere to go. Dkt. #7, pp. 59-61. He uses a very long shoehorn to put his shoes on, and he usually just sponge bathes because of his limitations. Dt. #7, p. 60. He also sometimes uses a handicap bathroom at another location. Dkt. #7, p. 60.

Next, the ALJ questioned plaintiff. Plaintiff testified that he is approximately 6' 1" tall and weighs approximately 242 pounds, although his weight had previously been 300 pounds. Dkt. #7, p. 62.

Plaintiff graduated from high school and last worked in 2012 through a temporary service agency. Dkt. #7, pp. 62-63. From 2005 to 2007, plaintiff worked as an interior and exterior painter. Dkt. #7, p. 63. From 1998 through 2000, plaintiff worked as a lathe operator and in a ceramic clad position . Dkt. #7, p. 64.

Plaintiff also testified that he had previously been addicted to street drugs but had been sober since December 11, 2013. Dkt. #7, p. 65. However, he testified that he uses medical cannabis. *Id.*

Next, the ALJ heard testimony from Mary Vasishth, a vocational expert ("VE"). The VE first testified that plaintiff's past work was classified as skilled, medium exertional level; semiskilled, medium exertional; and semiskilled, light exertional. Dkt. #7, p. 67.

The ALJ then asked the VE to assume a hypothetical individual aged 33-42 years old with a high school education with plaintiff's past relevant work[2] who is capable of performing a range of sedentary exertion, specifically occasionally lifting or carrying 10 pounds; frequently lifting and/or carrying less than 10 pounds; standing and or walking up

---

[2] The ALJ specified that only the painter position should be used as to plaintiff's SSI claim. Dkt. #7, p. 67.

~ 6 ~

to 2 hours in an 8-hour day; sitting for 6 hours in an 8-hour day; occasionally pushing and/or pulling 10 pounds; occasionally climbing ramps and/or stairs, balancing, stooping, kneeling, crouching, and crawling; and occasionally climbing ladders, ropes, or scaffolds. Dkt. #7, p. 67. The VE stated that this person also should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and other respiratory irritants. *Id.*

Further, the ALJ stated that this person is mentally able to understand, remember, and carry out simple instructions and tasks; occasionally interact with coworkers and supervisors; have little to no contact with the general public; is able to work in a low stress work environment, defined as no supervisory duties, no independent decisionmaking, no strict production quotas, minimal changes in work routine and processes; and is able to consistently maintain concentration and focus for up to two hours at a time. Dkt. #7, p. 68.

The VE testified that, under this hypothetical, plaintiff could not perform his past work. *Id.*

The ALJ then asked the VE if there were other jobs in the national economy that could be performed within such limitations. *Id.* The VE testified that there were two such positions: addressing clerk and document preparer, which are both unskilled, sedentary positions. Dkt. #7, pp. 68-69.

The ALJ then asked the VE if there was an additional limitation that the person was unable to interact appropriately with coworkers, supervisors, and the general public, whether there were any jobs in the national economy that he could perform. Dkt. #7, p. 69. The VE stated there were not. *Id.*

Plaintiff's counsel then questioned the VE. She asked if the person was absent more than a day a month, whether work would be available. Dkt. #7, p. 70. The VE responded that such absences, in her opinion, would preclude all competitive employment. *Id.* The VE gave the same opinion as to the person being off task for more than 10% of the workday. *Id.*

On April 27, 2021, the ALJ issued an unfavorable decision. Dkt. #7, pp. 19-32. The Appeals Council denied review on May 13, 2022, Dkt. #7, pp. 5-10, and this action followed.

**DISCUSSION AND ANALYSIS**

**<u>Legal Standards</u>**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d

Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers

in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, as relevant, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since June 1, 2012, the alleged onset date; (2) plaintiff has the severe impairments of osteoarthritis of the lumbar spine; obesity; chronic obstructive pulmonary disease ("COPD")/emphysema; major depressive disorder; post-traumatic stress disorder ("PTSD"); and heroin use disorder; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) since June 1, 2012, plaintiff retained the RFC to perform a range of sedentary work[3], except he can occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds; stand and/or walk up to two hours in an eight hour day and sit for six hours [in] and eight hour work [day]; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch and crawl; occasionally climb ladders, ropes or scaffolds; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; understand, remember and carry out simple instructions and tasks; occasionally interact with coworkers and supervisors; have little to no contact with the general public; able to work in a low stress work environment (i.e., no supervisory duties, no independent decision-

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

making required, no strict production quotas, minimal changes in work routine and processes, etc.); and is able to consistently maintain concentration and focus for up to two hours at a time;  (5) plaintiff is unable to perform any past relevant work; and (6) considering plaintiff's age, education, work experience, and RFC, plaintiff is able to perform the occupations of addressing clerk and document preparer; and (7) plaintiff was not, therefore, disabled within the meaning of the SSA from June 1, 2012 to the date of the ALJ's decision. Dkt. #7, pp. 19-26.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1))*.* Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2))*.* Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**

The Court first observes that, although plaintiff's brief discusses in detail his lengthy medical history and various impairments, his challenges to the ALJ's decision are comparatively limited.

***Medical Opinion Evidence and the RFC***

Plaintiff first argues that the ALJ erred by failing to include in the RFC psychological limitations to which two experts opined, even though the ALJ found those opinions persuasive. Dkt. #11-1, pp. 13-20. This argument is not well taken.

In explaining the relationship between plaintiff's mental impairments and the RFC, the ALJ first reviewed the consultative examination performed by Dr. Yu-Ying Lin on October 29, 2019. Dkt. #7, p. 28. Dr. Lin noted that plaintiff had been diagnosed with PTSD, major depressive disorder, and heroin use disorder. Dkt. #8, pp. 565-566. However, on examination, plaintiff demonstrated a cooperative demeanor, appropriate eye contact, and his mood was euthymic. Dkt. #8, pp. 563-564. However, his attention, concentration, and recent memory were moderately impaired due to nervousness in the evaluation and distractibility. Dkt. #8, p. 564.

The ALJ then reviewed plaintiff's therapy and treatment records, noting that while they documented his depressed mood, they showed generally normal findings, and that he was cooperative, maintained average eye contact, and his cognitive functioning appeared within normal limits. Dkt. #7, p. 28.

Turning to the opinions of state agency psychological consultants Drs. Weitzen and Inman, the ALJ acknowledged that these reviewers opined that plaintiff was "moderately limited" in several areas, including maintaining concentration for extended periods; interacting with the general public; accepting instructions from and responding

appropriately to criticism from supervisors; and regulating emotions, controlling behavior, and maintaining well-being. Dkt. #7, pp. 29, 90-91, 99. However, the ALJ noted that both Drs. Weitzen and Inman opined that plaintiff retained the ability to meet the basic demands of unskilled work in a low contact setting. Dkt. #7, pp. 29, 92, 110.

The ALJ found these opinions to be "persuasive," noting that they were supported by treatment records documenting that plaintiff was sometimes anxious, agitated, and aggressive, but otherwise his examinations were within normal limits. Dkt. #7, p. 29. The ALJ also addressed consistency, observing that the opinions of Drs. Weitzen and Inman were consistent with Dr. Lin's observations and opinions based on her consultative examination of plaintiff, as discussed above. *Id.*

The ALJ similarly deemed Dr. Lin's opinion "persuasive." Dkt. #7, p. 30. He noted that the opinion was supported by plaintiff's substance abuse history followed by his sobriety from heroin, as well as her clinical findings during her examination. *Id.* The ALJ also found Dr. Lin's opinion consistent with other evidence, citing treatment records reflecting that, despite a drug relapse in June 2020 and evidence of an ongoing depressed mood, plaintiff presented with generally normal findings, was cooperative, maintained average eye contact, and his cognitive abilities appeared within normal limits. *Id.*

Plaintiff argues that the RFC does not properly account for the opinions of Drs. Lin and Weitzen that plaintiff was "moderately" limited in the areas noted above and is thus not supported by substantial evidence. This argument is unavailing.

First, it is important to remember that "the RFC is an administrative and not a medical finding that is to be formed based on an ALJ's review of the entire record and not just by following one particular opinion." *Candy R. v. Comm'r of Soc. Sec.*, 6:23-cv-06608-EAW, 2024 WL 3886221, at *2 (W.D.N.Y. Aug. 21, 2024). "In fact, the ALJ must weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.* (citation and internal quotation marks omitted).

Second, it is well established that a plaintiff's "moderate" limitation in the ability to accept instructions and respond appropriately to criticism from supervisors "is consistent with an RFC limiting plaintiff to unskilled work." *Nathan P. v. Comm'r of Soc. Sec.*, 19-CV-954Sr, 2021 WL 1139849, at *5 (W.D.N.Y. Mar. 25, 2021) (citations and internal quotation marks omitted).

"Moreover, such a moderate limitation can be accommodated by a restriction to occasional interaction with supervisors." *Id.* at *6.

The RFC here comports with this authority because it restricts plaintiff to performing only unskilled work, occasionally interacting with coworkers and supervisors, and having little to no contact with the public. Dkt. #7, p. 31. *See Washburn v. Colvin*, 286

F. Supp.3d 561, 565-566 (W.D.N.Y. 2017) (RFC that limited plaintiff to unskilled work requiring no interaction with the public and no teamwork was consistent with medical opinion that plaintiff was capable of unskilled work in a low contact setting; it is "well-settled that limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning") (citations and internal quotation marks omitted). *See also Candy R.*, 2024 WL 3886221, at *4 (RFC limiting plaintiff to unskilled work with limitations on interactions with others adequately accounted for moderate limitation in ability regulate emotions, control behavior, and maintain well-being).

Therefore, "Plaintiff's challenges amount to a disagreement with the ALJ's findings, and while [he] may disagree with the ALJ's conclusions, it is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." *Id.* at *7.

The Court concludes that plaintiff has not met that burden.

### *Plaintiff's Non-Severe Limitations*

Plaintiff next argues that the ALJ failed to account in the RFC for plaintiff's non-severe impairments of hearing loss and left hand fracture and that remand is thus required. Dkt. #11-1, pp. 20-21. The Court disagrees.

"The ALJ must consider the impact of all of a claimant's medically determinable impairments when assessing the claimant's RFC, regardless of whether an impairment qualifies as severe or nonsevere at step two." *Annette A. v. Comm'r of Soc.*

*Sec.*, Case # 23-CV-6087-FPG, 2024 WL 2956906, at *2 (W.D.N.Y. June 12, 2024) (citation and internal quotation marks omitted). "Remand may be necessary where the ALJ fails to properly consider the impact of a claimant's nonsevere impairments on the RFC." *Id.* "Such consideration must be discernible in the decision itself." *Id.*

Here, while the ALJ did not discuss plaintiff's left wrist fracture and hearing loss during his RFC analysis, "the record as a whole shows that he did evaluate those impairments and their possible limiting effects and found those limitations to be non-existent or *de minimis*, thereby rendering any legal error on his part harmless." *Trombley v. Colvin*, 8:15-CV-00567 (TWD), 2016 WL 5394723, at *17 (N.D.N.Y. Sept. 27, 2016) (citations and internal quotation marks omitted).

Specifically, at page five of his decision, the ALJ discussed plaintiff's "history of left wrist fracture, history of left wrist surgery, history of left-sided carpal tunnel syndrome release surgery, and decreased hearing of the left ear." Dkt. #7, p. 23. The ALJ cited to medical records documenting surgeries plaintiff underwent to correct these conditions. *Id.*

The ALJ then noted that, on examination, plaintiff's "ears appeared normal"; his strength in his left extremity was only "minimally diminished"; and he was able to zip, button, and tie with both hands. *Id.*

The ALJ concluded this paragraph by stating that he had considered all of claimant's medically determinable impairments, including those that are not severe, in assessing his RFC. *Id.*

Therefore, "[v]iewed in the context of the record evidence and relevant medical opinions, the Court can readily 'glean' from the ALJ's decision that he found that Plaintiff's [nonsevere] conditions did not cause any functional limitations warranting a more restrictive RFC." *Annette A.*, 2024 WL 2956906, at *4. "As a result, remand for a more detailed assessment would serve no purpose and is not warranted." *Id.* (citation and internal quotation marks omitted).[4]

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #11) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #13) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

---

[4] As in *Annete A., id.*, at *4, n.4, plaintiff asserts that his non-severe impairments warranted additional limitations, but he does not say what such additional limitations would be. Dkt. #14, p. 2.

DATED:	Buffalo, New York
	January 3, 2025

                                      **s/ H. Kenneth Schroeder, Jr.**
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**